(C. D. 210)

F. W. Woolworth Co. *v.* United States

United States Customs Court, First Division

(Decided September 12, 1939)

*Sharretts & Hillis* (*Edward P. Sharretts* and *Arthur L. Tallman* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges (McCLELLAND, P. J., not participating)

SULLIVAN, Judge: The merchandise covered by this protest consists of miniature metal figures, representing people, animals, and inanimate objects, such as benches, trees, fences, etc. They are represented by samples in evidence marked Exhibits 1 and 2.

The collector of customs at the port of New York classified this merchandise as toys, or articles chiefly used for the amusement of children, and assessed duty thereon as such at 70 per centum ad valorem under paragraph 1513, Tariff Act of 1913.

The plaintiff-corporation claims in the protest. "that said merchandise is not chiefly used for the amusement of children and is properly dutiable at 45% under Par. 397" of the same act. This provision covers manufactures of base metal, not plated, etc., with precious metal, and not specially provided for.

The minutes of the trial are quite lengthy, there being some thirty witnesses for the plaintiff and thirteen for the defendant.

Plaintiff's witness Beineix merely proved samples and photographs of the merchandise, and did not testify as to the use thereof.

· Plaintiff's witness Curtis proved the making of certain of the photographs in evidence.

Plaintiff's witness Cassidy, employed in plaintiff's store, testified she had seen these articles used in homes as follows:

I have a little friend who uses them on top of the dresser, or in her room on a · highboy, or a table; a girl that goes to high school. * * * I have seen them in three different homes. One little girl I know just collects horses of all kinds. * * * The one that collects horses is 16 years old.

She testified she had not seen children under 14 playing with these articles; and that where she had seen them they were used ornamentally.

Plaintiff's witness Margaret Brown testified she is a housewife, and used these articles as decorations on a table, to decorate the end table in her living room; that she had also seen them used in other homes on glass shelves for ornamental purposes; that while there were small children in those homes she had not seen the children playing with these articles. She explained these uses as follows:

I saw them in one home in the kitchen window, on a glass shelf; and then I saw them in another home at the dining room window; and I have them in my own home.

Plaintiff's witness Curtis testified she is a housewife and used these articles to decorate her home as follows:

I have a little shelf in the kitchen there, and I put them on a mirror and I decorate with them in that way; and I have a table, and I use them on the radio, and I have a glass there and put them on there as a decoration also.

She had seen them used in other places than her own home as follows:

One girl in our bridge club—she uses them on the sill of the window—where they close the window she has different figures.

She had also seen them used in Teaneck, N. J., in a home there on a shelf in the kitchen, and in other homes. She described their use and arrangement as follows:

Well they are arranged—one girl has one big long shelf, and has these little figures, dogs, a cow, and things like that. She has them on a long shelf. Then the other girl has them on the window sill in the sun parlor. She has them in the windows.

She further testified that she went around with other women of her own age shopping for these articles "to decorate with"; that she had never seen any small children under 14 years of age playing with articles like these, and that "the only place I have seen them is on shelves and things like that."

Plaintiff's witness Paula testified she is a beautician, and has "made a collection of those articles here," among them the peasant figures, and that she had used them as follows:

I made them into a French garden, and I used them on the mantelpiece over the fireplace; also used them in different flower pots; then the figure I have put in the flower pot. I have used them on the table, and sometimes at a dinner party on a mirror displaying them in different ways.

She further testified she had seen these articles used by her sister, who "has a garden of that sort, and uses them on the mantelpiece * * * because they are rather pretty"; that she had not seen small children under 14 years of age playing with these.

Plaintiff's witness Muller is a real estate and insurance broker located in Queens Village, Long Island. He testified he had personally used articles such as these, referring to items in Collective Exhibits 1 and 2 "In amateur photographic competition" as follows:

I try to arrange them, placing them in a humorous setting of these figures, and photograph them. * * * I am a member of the Jamaica Camera Club, and on two occasions I have won a prize with pictures taken using these figures.

He further testified he had seen these articles used by other people "as Christmas decorations, around the fireplace" as follows:

The owner of the home had arranged a snow village, or a small village, and contained in this village were numerous small metal figures and ornaments, trees—

He further testified he had never seen small children under the age of 14 playing with figures of this kind.

Plaintiff's witness Dayton testified he is manager of one of the plaintiff's stores, and that these articles "were assembled in a scene, in a setup on the counter. * * * a barnyard scene" in one of plaintiff's stores. In response to the court's question he described how these articles were assembled in the store as follows:

We had a large platform, about 40 inches long and 20 inches wide, with artificial grass, sand, and small trees, and a large palm in the center, and these small metal figures assembled around the barn.

On cross-examination he testified he had seen these articles in at least half a dozen Woolworth stores in the New York City area.

Plaintiff's witness Diamant testified he is a salesman not connected with the plaintiff, and had used these articles on his dresser, in front of a small aquarium, for ornamental purposes.

Plaintiff's witness Smykal testified she is a secretary in a brokerage firm, and had seen these articles used in friends' homes as follows:

Well, one of my friends had a knickknack shelf, and she had just novelties displayed, and among them some of these figures; those little pigs she has. * * * She has a figure of a little peasant.

She testified she had never seen small children playing with these articles, or children under 14. She had also seen them used in other homes on tables and "knickknack racks."

Plaintiff's witness Opasser testified she is a housewife, and has a few of these articles in a curio cabinet hanging on the wall; that she has a daughter 5 years old, who does not play with these articles, but "respects those the same as other decorations around the house"; that she also has a neighbor who has a set on her mantelpiece; that she had never seen small children under 14 playing with figures of this kind.

Plaintiff's witness Lewis testified she is a neighbor of the preceding witness and is a housewife; that she has personally used articles of this kind "on the mantelpiece over the fireplace"; that she had never seen small children under 14 playing with articles such as these.

Plaintiff's witness Gassert is a housewife, and had personally used articles such as these in Exhibits 1 and 2 "in the 'whoopee room' in the cellar * * * as ornaments"; that she has a daughter of 7 years, who does not play with these articles; that she has been using them as ornaments for several years; that she had also seen them used as follows:

* * * I have a friend who has a beautiful Japanese garden, and she has quite a few of these figures in the garden.

She further testified she had never seen any children under 14 playing with these articles, and—

A great many people have them in their garden display. I have another friend who collects horses.

Q. All using them in the same way?—A. On the mantelpiece; large horses and small ones.

On redirect examination she testified the whoopee room is not a child's playroom, but for adults "to make whoopee in," and "the children are not allowed in there."

Plaintiff's witness Comerford testified she is a housewife; that she had personally used articles such as are contained in Exhibits 1 and 2 "on a corner shelf"; that she had been using these as ornaments about 6 months; that she has a little boy a year and a half old, who does not play with these articles, nor has she seen any children under 14 playing therewith; that she has friends in the Bronx who have them in a glass cabinet.

Plaintiff's witness Schretzmann testified she is an employee of the plaintiff, and has personally used these articles for about 8 months, as follows:

I made a terrarium. * * * out of a can. * * * You take a square can and put some little legs on the bottom and put some grass in it. I used to have plants in them, but the plants never seemed to grow, and I decided to put some figures in them, and they looked nice. * * * A sort of a park scene.

She further testified she had seen other people using little metal dogs on a table; that she had never seen any small children under 14 playing with articles like Collective Exhibits 1 and 2.

Plaintiff's witness Schantzle testified she is employed in one of plaintiff's stores; that she has personally used articles such as Collective Exhibits 1 and 2 "as a decoration on the Christmas holidays on the mantel"; that she has a nephew 10 years old, and he does not play with these articles; that she has also seen them used in her sister's home in the same way as she used them; that her sister has "a son 11 years old"; that she has never seen him playing with these articles; that she used them entirely as a decoration "on top of the radio"; and that she had never seen any small children under 14 playing with articles of this kind.

Plaintiff's witness Sharphouse testified she is employed in one of plaintiff's stores; that she has used these articles on the dressing table; "as a display"; that she had never seen children under 14 playing with these articles; that she had also seen them used in the homes of friends, "One was on the shelf in the dining room and the other was displayed on the plate wall in the dining room."

Plaintiff's witness Cauwells is also employed in one of plaintiff's stores. She testified she had seen these articles used "in friends' homes and flower shops," "as a scene," and on a "knickknack rack" and in the flower shop as a decoration; that she had never seen children under 14 using these articles, nor playing with them.

On cross-examination she testified she saw these articles in a relative's home "set up as a scene above the fireplace."

Plaintiff's witness Cacioppo is also employed in one of plaintiff's stores. She testified she had seen these articles used "in the homes of my friends" displayed on corner shelves; that she had never observed children under the age of 14 playing with these articles.

Plaintiff's witness Liloia is also employed in one of plaintiff's stores. She testified she had seen these articles used in a friend's home; that "she had a collection of horses. They were in the dining room"; that she had never observed children under 14 playing with these articles.

On cross-examination she testified to a further use of these articles in a little shop in Newark as follows:

Just before Christmas I went to see a display room in one of the shops in the street. I don't remember what store it was; and they had a winter scene, with snow and reindeer, and a sled; and I have seen things like those in collective exhibit 1 * * *. It had trees in it too * * * like this in collective exhibit 1 * * * .

Plaintiff's witness Condon is also employed in one of plaintiff's stores. She testified she had observed the use of articles like those in Exhibits 1 and 2 "at my sister's home and my friend's home" as follows:

They were displayed on a corner shelf just at the head of the stairs.

She further testified she had never observed children under 14 playing with articles like Exhibits 1 and 2.

Plaintiff's witness Lusardi was also employed at one of plaintiff's stores. She had observed the use of these articles on a mantel shelf at a friend's home, and had not seen children under 14 playing with them.

Plaintiff's witness Rada was also an employee of the plaintiff. She had observed the use of these articles at her aunt's home in her foyer on a corner shelf; also on a shelf in the living room of the home of a girl friend. She testified she had never seen children under 14 playing with them.

Plaintiff's witness Weaver is an employee of the plaintiff. She had seen these articles used "at my cousin's house, on a table in the living room," and had never observed children under 14 playing with them.

The Government conceded that these articles are made of metal, and that they are not plated with gold, silver, or platinum, nor colored with gold lacquer.

Plaintiff's witness Dibble testified he does some decorating, and has used these articles "as a scenic background for scale model railroad displays"; that he has a small child in his house, aged 6, and she

does not play with the set he constructed, nor with the individual parts.

He further testified he had seen them used as follows:

I have seen them used on similar displays as mine, in the homes of friends and relatives, and I have seen them used in the manufacturer's establishment; the man who makes these train sets up, who sells them complete. I have also seen them used in stores, when they are used as ornaments. For instance, I saw a number of them in a butcher store in the glass window, showing cows and various other animals, which indicated that meat was sold in the shop; and I have also seen them around Christmas time, used around Christmas trees in rural scenes.

On cross-examination he testified that the set he erected consisted of "farm buildings, stores, mountains, tunnels, crossings, road beds and trains; parkway lights and everything that I could use to make a rural scene." He indicated various items in Exhibits 1 and 2 that he used in composing the set he referred to.

Plaintiff's witness Fickeissen testified he manufactures model trains and tracks; that such articles are not playthings; and most of his trade is adult. In response to a question by the court he testified he usually used in his sets the figures in question, but "that is left to the customers."

Plaintiff's witness Sussman testified she is an employee in one of plaintiff's stores; that she has personally used articles like those in Collective Exhibits 1 and 2 "on the wall in a corner shelf"; that there are two small children in her home, aged 6 and 8, and they do not play with these articles; that besides these articles on the shelf was "a little vase with flowers in it, and things like that." She picked out certain items in Exhibits 1 and 2 that she had used. She testified a friend of hers had some of these figures on a corner shelf, indicating a tree in Collective Exhibit 2, and a man sitting on a bench from the same exhibit; that she had never seen any children under the age of 14 years playing with things like these.

Plaintiff's witness Diamond is also an employee of the plaintiff. She testified she had seen these articles "displayed around Christmas trees" in a number of homes, and picked out from the exhibits certain items she had seen so used; that these figures were used to represent a scene; and that she had never observed children under 14 playing with articles like these exhibits.

Plaintiff's witness Remde is also employed by plaintiff. She testified she had personally used articles such as are contained in Collective Exhibits 1 and 2 "under the Christmas tree;" that she had also observed their use by her sister "on a wall shelf," and by a friend's mother in "a crib at Christmas time, and she has farm animals under the crib"; and that she had never observed children under 14 playing with articles like either of these exhibits.

Plaintiff's witness Schiels, also an employee of plaintiff, testified to a similar effect as to the use of these articles for decoration, and not for the amusement of children under 14 years of age.

The foregoing is the gist of plaintiff's evidence. It will be seen it indicates unanimously a use for this merchandise for decorative and ornamental purposes, and not for the amusement of children under 14 years of age.

Defendant's witness Gimbernat testified she is a housewife residing in Rahway, N. J.; that she is the mother of a boy of 12 and a girl of 11; that prior to that time she practiced nursing in New York City, and had charge of a farm near Memphis, Tennessee, for under-nourished children.

The witness examined Exhibits 1 and 2, and testified she had seen some of the articles used by her children to play with, also by "youngsters who come to play with them"; that she had seen such use for about 5 years in New Jersey. She testified to such use as follows:

> The ones that I have reference to are the animals, the little cows and ducks, and then the little men, especially the little man with the wheelbarrow. They place them around and make little villages, and they use them in that way. * * * My boy is 12 now, and he played with them around five years ago.

She further testified that she had never seen adults, or people over the age of 12 or 14, use articles like those in the exhibits. She elaborated on the use of these articles by children as follows:

> They would use them to arrange little villages, with little stores around, and with the animals; and that is the only way I could say; having them arranged in those villages, with the animals and the men, as if they were building stores, especially around Christmas time. They would have them around the Christmas trees.

Defendant's witness Thompson testified he is a buyer for the plaintiff, buying articles for about 2,000 stores in the United States; that he purchased merchandise of the character of that in Collective Exhibits 1 and 2 in large quantities up to approximately 201,000 dozen in the year 1939.

On cross-examination he testified:

> It is my impression that during the past few years there has been a fad to use items of this kind for decorative purposes, to put on mantels and on tables, and so on and so forth. In fact I have seen them in homes. * * * I have seen them on mantels as decorative articles. * * * I have seen them made into little villages for display purposes * * * and I have seen them used under the Christmas tree for decorative purposes, to make mountain scenes, and in fact villages and so on and so forth, to give the Christmas tree the appearance of being out in its natural state.

He further testified that these decorative uses were by adults. This supports plaintiff's evidence.

Defendant's witness Zimmerman testified she is a housewife in Rahway, N. J.; that she is the mother of two children aged 9 and 6 years; that she is familiar with articles like those in Collective Exhibits 1 and 2; that she has seen these articles used by children many times in the vicinity of Rahway as follows:

They were used in two different ways. One was in a race. They tie them to wind-up toys and they use them in that way, and then they make farms with them.

She further testified she had seen such uses by her own children and their friends aged from 5 to 9 years; and that she had never seen these articles used by adults.

Defendant's witness Muller testified she is a housewife and substitute teacher in the public schools at Woodbridge, N. J.; that she has a boy of 16 and a girl 14; that she is familiar with the articles in Collective Exhibits 1 and 2, and had seen some of them used "by my own children and by children of friends" as follows:

I have seen them building villages, using electric trains, using the little articles, with a station, and then on the outskirts animals for a farm. I have seen them line them up and make a parade of them. I have seen them used at the seashore, where they would build trains of them and make various things with them. Then I have seen them used when they were confined to their beds.

She testified that the ages of these children were between 5 and 12 years; that she had also seen children use them in the graded schools from the first to the eighth grade "for instance, if they were studying about a farm they would use animals in the farm scene"; and that she had never seen adults use articles like Exhibits 1 and 2.

Defendant's witness Rankin is a housewife with three sons of 10, 12, and 15. She testified she had seen articles like Exhibits 1 and 2 used as follows:

About three years ago my youngest boy was given several of them at Christmas time. * * * He was not quite seven. * * * The little fellow plays with them. The children came in at Christmas time and played with them also. * * * He has an electric train going, and a little cardboard bridge, a little bridge, he made a little bridge over the electric train, had a man with a cane, a pig, a horse, a cow, and I believe there were three or four animals following. Then he would place them in line crossing the track. * * * At one time my boy was at a party, and each child was given a little animal as a favor.

She further testified she had never seen adults use articles like Collective Exhibits 1 and 2.

Defendant's witness Clark, also a housewife, testified to a similar effect as to the use of these articles by children of her own and neighbors. She described one instance as follows:

* * * I was out and came home and found my girl of twelve had used the kitchen table, and working on the oilcloth of the kitchen table had taken colored crayon, and she had made lakes green, and she had a swan in the lake, and she had a roadway, and trees that represented a forest, a building sitting beside it. * * *

She testified to a similar use of these articles by her brother's children at Ogdensburg, N. Y., their ages being from eight down "in sand piles, building up the sand pile and making a tunnel through, or making a hole for a lake and so forth."

Defendant's witness Allersmeyer testified she is a writer specializing "in the subject of children and their play activities"; that she is a graduate of Vassar and specialized in "child psychology"; that in the course of her study she had "spent a great deal of time watching children at play"; that she is familiar with the articles contained in the exhibits; that she gained such familiarity by watching children at play on many occasions; that children "use these to dramatize their play. They may have a doll house and these little figures"; that children in the use of these articles were delighted and amused; that the ages of these children were "from the toddle age up to about ten"; that in her studies she had daily come in contact with such children over a period of 12 years; and that she had never seen adults use these articles.

Defendant's witness Herzfeld testified she is the principal of a private school, and has been for 25 years; that the children range in age from about 3 and 4 years to about 12 to 14; that it is part of her training and daily experience to make a study of what amuses children; that she has seen such articles as Exhibits 1 and 2 used as follows:

We used them to demonstrate various projects. They are used at the school on the sand table. When the teacher works out a project such as life in the jungle they will first take the children to the zoo or to a menagerie, and show them some of the wild animals, and then upon their return they will take the small figures and make a demonstration on the sand table. * * * We had a summer camp * * * in 1930 through 1933, and for our little tots we took toys such as those for them. * * * Figures like them.

She was asked whether she had ever seen adults use these articles, and replied:

Our teachers handle them, and I do myself, to study their characteristics, in order to impart knowledge. * * *

* * *. They have various projects. The teachers have the projects. If they have a scene in Holland, for instance, they would take a Dutch mill and get the animals, the cows, and enlarge on that; or when they have been to Borden's or Sheffield Farms to learn all about the milk project, for the small children to fasten it in their minds, to show them the little cows and little calves and horses, and that sort of thing.

Judge Sullivan: That is in teaching the children?

The Witness: Yes; the children, of course, handle them, and then they make little exhibits for themselves with the articles, to show how they remember it.

She further testified that children use these articles "in the free play period" among themselves; that "They take blocks and build houses and put them in in their free play period."

Defendant's witness Kanisky testified she is a kindergarten teacher at the Claremont School, having charge of children from 3 to 6. Her testimony was along similar lines to that of the preceding witness as to the use of these articles for educational purposes by small children, and in their play. She testified she had only seen adults use

these articles for teaching in conjunction with their kindergarten pupils.

On cross-examination she testified that the teachers require quite a little skill in constructing these various villages and scenes, and they try to arrange these articles according to a correct scale, the buildings in conjunction with the figures.

Defendant's witness Cloninger testified she is a sculptress and has designed toys; that she had seen these articles on the toy counters in stores, and has seen children playing with them, their ages being up to 12 years; that she had never seen adults use articles like Exhibits 1 and 2.

On cross-examination she testified she had seen these articles used at Christmas time around the tree with farm or snow scenes, and had seen farmers and figures on knickknack cabinets or on mantels.

Defendant's witness Kooken testified she is a sculptress and has designed toys; that she is familiar with such articles as Exhibits 1 and 2, and has seen them used by children; that she used them herself when she was a child; that the ages of the children were up to 12 or 14; that she has never seen adults use articles like Exhibits 1 and 2; that she had never seen them displayed on shelves as ornaments or knick-knacks in homes or apartments.

On cross-examination she testified that while she had designed toys, she had never designed any of the articles in Collective Exhibits 1 and 2, but had designed articles "of the same exact character," such as cows and horses, but they were "absolutely not" the same as Exhibits 1 and 2.

Defendant's witness Cloninger was recalled and testified she had never seen articles like Exhibits 1 and 2 "used as ornaments or knick-knacks standing on mantels over fireplaces in homes or apartments."

Defendant's witness Gibney testified he is an "acting examiner of toys and novelties"; that he makes advisory returns for the benefit of the appraiser; that he is familiar with the articles contained in Exhibits 1 and 2, and has observed their use in Manhattan, the Bronx, and Queens for the past 5 years as follows:

The animals I have seen used in conjunction with circus sets or wild animal sets. I have also seen them used in what they call toy villages. They place these figures around farmhouses. The wagons they use to cart their merchandise from one house to another.

He testified that the ages of the users of these articles ranged from 6 to 8 years; that he had never seen adults use them.

This closed the testimony. It will be observed that the weight of this testimony indicates that these articles are not used chiefly for the amusement of children. Their use by children may interest and entertain them, but that is not such amusement as would be obtained by them in playing with a doll, a ball, a top, and similar

playthings. The weight of the testimony establishes that their predominant uses are in decoration, building farm, railroad, garden, and similar scenes; by teachers for educational purposes; and as decorations under Christmas trees. Their suitability for such uses is confirmed by the samples themselves, which are very lifelike miniature figures of men and women, animals, trees, bridges, wells, donkeys drawing carts, windmills, chickens, benches, gates, fences, ponds, buffaloes, Indians, and miniature figures of a similar nature made of metal and colored in an appropriate manner.

This is purely a question of fact, and the briefs of counsel do not assist us. The Government's brief is largely a synopsis of the testimony coupled with a few citations familiar to the court. The authorities cited by plaintiff are also familiar to us. It is unnecessary to comment thereon. In a question of fact, such as this, authorities do not assist us, for the reason, as held by Chief Justice Taft in *United States* v. *Stone & Downer*, 274 U. S. 225, there is practically not any *res adjudicata* in customs litigation. Each case must stand on its own bottom as far as questions of fact are concerned. In this case after carefully considering all the facts we believe that the weight of the testimony establishes that this merchandise is not used chiefly for the amusement of children, but for the various purposes heretofore mentioned.

Accordingly, we hold that the merchandise at bar is not classifiable as toys, and that it is dutiable, as claimed by the plaintiff, at 45 per centum ad valorem under paragraph 397 of said act.

The protest is sustained. Judgment for plaintiff.